# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS,
## HOUSTON DIVISION

| | | |
|---|---|---|
| CTI III, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No.: 4:26-cv-1465 |
| BLAKE PETERS and PETERS SPECIALTY | § | |
| TAX SERVICES LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## PLAINTIFF'S MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................1

II.     SUMMARY OF RELEVANT FACTS ......................................................................2

        A.      Peters' Role at CTI Gave Him Access to CTI's Trade Secrets and Other
                Confidential Information. ...........................................................................2

        B.      Peters Entered into Valid and Enforceable Confidentiality, Non-
                Solicitation, Non-Interference, and Non-Compete Covenants with CTI.................3

        C.      While Still an Employee of CTI, Peters Secretly Formed Defendant PSTS
                to Compete with CTI, in Violation of His Contractual Obligations. ......................4

        D.      Defendants Have Misused—and Continue to Misuse—CTI's Confidential
                Information to Unlawfully Solicit CTI's Clients. ......................................5

        E.      CTI's Agreements with Peters Authorize CTI to Seek Injunctive Relief
                through This Lawsuit until CTI's Claims Are Resolved in Arbitration. .................6

III.    THE COURT SHOULD ENTER A TRO AND PRELIMINARY INJUNCTION
        AGAINST DEFENDANTS. ......................................................................................6

        A.      CTI Is Likely to Succeed on the Merits. ..................................................6

                1.      CTI Is Likely to Prevail on Its Breach-of-Contract Claim. .........................7

                        a.      Peters breached multiple provisions in the Confidentiality
                                and Intellectual Property Assignment Agreement
                                ("CIPAA"). ..........................................................................7

                        b.      The breached provisions are valid and enforceable. .........................9

                2.      CTI Is Likely to Prevail on Its Tortious Interference Claims
                        Against Both Defendants. ..................................................................12

                3.      CTI Is Likely to Prevail on Its Trade-Secret Claims Against Both
                        Defendants. ........................................................................................12

        B.      CTI Has Suffered and Will Continue to Suffer Irreparable Injury if
                Defendants Are Not Enjoined. ..............................................................16

        C.      The Balance of Equities Favors CTI. .....................................................17

        D.      The Public Interest Supports the Requested Injunction. .........................18

IV.     CONCLUSION ........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*A & A Global Indus., Inc. v. Wolfe*,
No. 3:01-cv-1515, 2001 WL 1388020 (N.D. Tex. Nov. 6, 2001) ..........................................16

*A.M. Castle & Co. v. Byrne*,
123 F. Supp. 3d 895 (S.D. Tex. 2015) ...................................................................................14

*Cambridge Strategics, LLC v. Cook*,
No. 3:10-CV-2167, 2010 WL 5139843 (N.D. Tex. Dec. 17, 2010) .......................................18

*Canal Auth. of State of Fla. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) ...............................................................................................17

*City of El Cenizo v. Tex.*,
890 F.3d 164 (5th Cir. 2018) .................................................................................................6

*Daily Instruments Corp. v. Heidt*,
998 F. Supp. 2d 553 (S.D. Tex. 2014) ..................................................................................16

*Hardy Way, LLC v. TM Perfumes Wholesale, Inc.*,
No. 10-cv-2735, 2010 WL 11579798 (S.D. Tex. Aug. 31, 2010) .........................................17

*Impact Fire Servs., LLC v. Osborne*,
No. 6:19-cv-00176, 2019 WL 4087563 (W.D. Tex. June 27, 2019) .......................................9

*Johnson Serv. Grp., Inc. v. Olivia France*,
763 F. Supp. 2d 819 (N.D. Tex. 2011) .................................................................................17

*M-I LLC v. Stelly*,
733 F. Supp. 2d 759 (S.D. Tex. 2010) ..................................................................................12

*Mach 1 Air Servs., Inc. v. Bustillos*,
No. 13-cv-00088, 2013 WL 12108595 (W.D. Tex. May 10, 2013) ......................................10

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
760 F.2d 618 (5th Cir. 1985) ...............................................................................................18

*NTGSH JV, LLC v. Williams*,
No. 4:20-CV-02469, 2020 WL 8299814 (S.D. Tex. Nov. 12, 2020) ....................................13

*Pittsburgh Logistics Sys., Inc. v. Barricks*,
No. 4:20-CV-04282, 2022 WL 2353334 (S.D. Tex. June 30, 2022).....................................14

*Ray Mart Inc. v. Stock Bldg. Supply of Tex. LP*,
    302 F. App'x 232 (5th Cir. 2008) ..........................................................................9

*Reveal Energy Services Inc. v. Dawson*,
    No. 17-CV-459, 2017 WL 5068459 (S.D. Tex. Aug. 21, 2017) .............................18

*Robogistics, LLC v. Siemens Indus., Inc.*,
    No. 1:22-CV-00474, 2023 WL 6614427 (E.D. Tex. July 20, 2023) ......................18

*Safeworks, LLC v. Max Access, Inc.*,
    No. 09-cv-2860, 2009 WL 959969 (S.D. Tex. Apr. 8, 2009)...................................9

*Smith Int'l, Inc. v. Egle Grp., LLC*,
    490 F.3d 380 (5th Cir. 2007) .................................................................................7

*Sunbelt Rentals, Inc. v. Holley*,
    No. 3:21-CV-3241, 2022 WL 827126 (N.D. Tex. Mar. 18, 2022)........................17

*Sunrgy, LLC v. Alfaro*,
    No. 4:24-CV-3583, 2024 WL 4953430 (S.D. Tex. Dec. 3, 2024)....................11, 16

*TFC Partners, Inc. v. Stratton Amenities, LLC*,
    No. 1:19-CV-58, 2019 WL 369152 (W.D. Tex. Jan. 30, 2019) ................13, 15, 18

*Traders Int'l, Ltd. v. Scheuermann*,
    No. 06-1632, 2006 WL 2521336 (S.D. Tex. Aug. 30, 2006) .................................16

*Universal Prot. Serv., LP v. Sommer*,
    No. 4:23-CV-3608, 2024 WL 718164 (S.D. Tex. Jan. 11, 2024)...........................16

*Visual Edge IT, Inc. v. Vaughan*,
    No. 22-cv-04220, 2022 WL 9392564 (S.D. Tex. Oct. 13, 2022) ............................9

*Wenner v. Tex. Lottery Comm'n*,
    123 F.3d 321 (5th Cir. 1997) ...............................................................................17

**STATE CASES**

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*,
    209 S.W.3d 644 (Tex. 2006)..................................................................................10

*Daniels v. Radley Staffing, LLC*,
    No. 14-19-00054-CV, 2021 WL 282630 (Tex. App. Jan. 28, 2021)......................14

*Fox v. Tropical Warehouses, Inc.*,
    121 S.W.3d 853 (Tex. App. 2003) .........................................................................15

# FEDERAL STATUTES

18 U.S.C.

§ 1836......................................................................................................6, 12, 15

§ 1839.............................................................................................................14

# FEDERAL RULES AND REGULATIONS

Federal Rules of Civil Procedure, Rule 65 ................................................1, 6

# STATE STATUTES

Tex. Bus. & Com. Code

§ 15.50(a) ...........................................................................................Page | 9

§ 15.51(c) .........................................................................................Page | 11

Tex. Civ. Prac. & Rem. Code

§ 134A..........................................................................................................6, 12

§ 134A.002...............................................................................................12, 14

§ 134A.003....................................................................................................15

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff CTI III, LLC ("CTI") hereby brings its Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction against Defendants Blake Peters ("Peters") and Peters Specialty Tax Services LLC ("PSTS").

## I.    <u>INTRODUCTION</u>

Plaintiff CTI is a highly respected tax consulting firm and the former long-time employer of Defendant Blake Peters.  In August 2025, while Peters was still employed by CTI as a Research and Development ("R&D") Director, Peters secretly formed a competing tax consulting firm: Defendant Peters Specialty Tax Services LLC.  Peters then resigned from CTI and misled CTI by telling CTI that he didn't know what he would be doing next.

In reality, Peters and PSTS set to work on their competing business, eventually soliciting CTI's clients and misusing the confidential information that Peters had gained through his employment at CTI—all in violation of Peters' agreements with CTI and other applicable law. This misconduct has caused and will continue to cause irreparable harm to CTI, including disruptions to CTI's client relationships.  Just this month, CTI learned that Defendants—via their prohibited solicitations and misuses of CTI confidential information—caused an established CTI client to cancel its ongoing contract with CTI, pursuant to which CTI had already performed hundreds of thousands of dollars of work, in order to hire Defendants for the same work.

By this Motion, CTI seeks injunctive relief to enforce Peters' non-solicitation, non-competition, and other contractual obligations to CTI, and to enjoin Defendants' other acts of misconduct, until CTI's claims against Peters can be resolved in arbitration pursuant to their arbitration agreement.[1]  Injunctive relief should be awarded now so that CTI does not suffer

---

[1]  As explained below in Section II.E, the parties' arbitration agreement authorizes CTI to bring a

additional client losses and other irreparable harms while the arbitration is pending, and injunctive relief should be awarded on an expedited basis by TRO given the recency of the harm to CTI and ongoing threat of further harm.

## II.  SUMMARY OF RELEVANT FACTS

### A.  Peters' Role at CTI Gave Him Access to CTI's Trade Secrets and Other Confidential Information.

CTI is a specialty tax consulting firm that helps its clients obtain various tax benefits and other tax incentives that entail considerable regulatory complexity and may not be within the capabilities of the typical CPA or tax preparer.  *See* Declaration of Darren Labrie in Supp. of this Mot. ("Labrie Decl.") ¶ 4.  To perform these services for its clients, CTI has invested significant time and effort in developing and maintaining proprietary information and know-how about these tax incentives, how to obtain them, and how to defend them in the event of an audit.  *Id.* ¶¶ 5-6.  For example, CTI has conducted proprietary analyses and developed proprietary knowledge regarding the audit process and results of audits; the defensibility of different approaches towards obtaining various tax incentives; the specific approaches that do and do not work for obtaining these tax incentives and how those approaches differ across industries; and client-specific knowledge about the optimal strategy for a client to obtain tax incentives, in light of client-specific information such as the client's employment practices, job-costing practices, and the terms of the client's contracts with customers.  *Id.* ¶ 6.

CTI protects this information as its trade secrets.  Among other measures to protect the secrecy of this information, CTI imposes a range of technological restrictions on access to this information and imposes confidentiality obligations in its contracts with both clients and employees.  *Id.* ¶ 9 & Ex. 1 (CTI's Template Master Services Agreement) at § 8.1; Declaration

lawsuit such as this that seeks equitable relief while the claims are litigated in arbitration.

of Stephanie Simonsen in Supp. of this Mot. ("Simonsen Decl.") ¶¶ 3, 5 & Ex. 4 (CTI Employee Handbook) at §§ 4, 8; Simonsen Decl. Ex. 6 (Confidentiality and Intellectual Property Assignment Agreement) at § 2. CTI also protects as confidential certain business information, such as client identities, client lists, client contract terms, and pricing and fee arrangements. Labrie Decl. ¶ 8.

Defendant Peters began working at CTI in 2017 as an Associate Director in CTI's group focused on tax incentives for R&D activities. Labrie Decl. ¶ 11; *see also* Simonsen Decl. Exs. 1-2. Peters was promoted to Director and continued working in this group until he resigned in August 2025. Labrie Decl. ¶¶ 11, 14.

In these roles, Peters worked extensively with CTI's proprietary and confidential information because his job responsibilities included resolving client issues related to technical tax issues and conducting director-level review of all client deliverables. Labrie Decl. ¶ 11. In order to perform these responsibilities, Peters used the confidential information described above—such as CTI's client contact information and contract terms, CTI's proprietary knowledge about the specific approaches that do and do not work for obtaining R&D tax incentives in different industries and for different clients, and CTI's conclusions about the applicability of R&D tax incentives for a given client in light of the client's business practices. *Id.* ¶ 12. Peters performed this work for CTI's clients throughout the United States. *Id.* ¶ 13.

### B. Peters Entered into Valid and Enforceable Confidentiality, Non-Solicitation, Non-Interference, and Non-Compete Covenants with CTI.

When Peters was hired in 2017, he agreed in writing to CTI's Confidentiality and Intellectual Property Assignment Agreement (Simonsen Decl. ¶ 5 & Ex. 2 ("2017 CIPAA")) and CTI's Arbitration, At-Will Employment and Employee Handbook Acknowledgement and Agreement (Simonsen Decl. ¶ 5 & Ex. 1 ("2017 Arbitration Agreement")). In 2024, Peters

agreed in writing to updated versions of the Confidentiality and Intellectual Property Assignment Agreement (Simonsen Decl. ¶ 5 & Ex. 6 ("CIPAA")) and Voluntary Arbitration Agreement (Simonsen Decl. ¶ 5 & Ex. 5 ("Arbitration Agreement")), as well as the policies in CTI's Employee Handbook (Simonsen Decl. ¶ 5 & Exs. 3, 4).

Those agreements imposed confidentiality, non-solicitation, non-competition, and non-interference obligations on Peters that remain in effect after the end of Peters' employment with CTI. Peters agreed that he would "not make use of, and not disclose or reveal to any third party" any of CTI's Confidential Information for at least five years after the end of his employment with CTI. Simonsen Decl. Ex. 6 (CIPAA) at §§ 2.4.1, 2.7. Peters also agreed that he would never use CTI's Confidential Information to compete with CTI, to solicit a CTI client to terminate its relationship with CTI, or to interfere with CTI's client relationships. *Id.* at §§ 7.1, 6.1.1, 6.1.2; *see also id.* at § 1.2 (broad definition of "Confidential Information," expressly including items such as "Client lists" and "information concerning Clients").

### C. While Still an Employee of CTI, Peters Secretly Formed Defendant PSTS to Compete with CTI, in Violation of His Contractual Obligations.

Peters resigned from CTI on August 15, 2025. Labrie Decl. ¶ 14. Two days **before** his resignation, Peters filed a Certificate of Formation with the Secretary of State of Texas to create Defendant Peters Specialty Tax Services LLC ("PSTS"). Declaration of Anthony Schoenberg in Supp. of this Mot. ("Schoenberg Decl.") ¶ 2 & Ex. 1. Peters is the sole Managing Member of PSTS. *Id.*

Peters then misled CTI about his plans. Even though Peters had already formed a company named "Peters Specialty Tax Services," Peters told CTI in multiple communications that he did not have another job lined up and may not even continue to work in the field of tax consulting. Simonsen Decl. ¶ 5 & Ex. 7; Labrie Decl. ¶ 14. But according to Peters' LinkedIn

profile, Peters started working at PSTS immediately after leaving CTI. Schoenberg Decl. ¶ 3 & Ex. 2. Further, the kind of work that Peters claims to be doing at PSTS—consulting on issues such as the R&D Income Tax Credit and R&D Payroll Tax Credit as a "Specialty Tax Consultant"—is the same work that Peters did at CTI, using CTI's trade secrets and other confidential information. Schoenberg Decl. Exs. 2-3; Labrie Decl. ¶¶ 12-13. The only logical explanation for this sequence of events is that Peters intended to deceive CTI and hide PSTS from CTI.

### D. Defendants Have Misused—and Continue to Misuse—CTI's Confidential Information to Unlawfully Solicit CTI's Clients.

CTI has discovered that Peters is breaching his agreements with CTI by soliciting CTI's clients and offering them services that use CTI's trade secrets and other confidential information. For example, CTI learned that Peters contacted an architectural design firm that has been a longstanding CTI client and whose R&D tax projects Peters had worked on at CTI. Labrie Decl. ¶¶ 17-18. Peters offered to sell this client, through his consulting services, proprietary analyses that CTI employees other than Peters had conducted of how this client's contracts with vendors and customers could be revised to optimize the firm's ability to obtain R&D tax incentives. *Id.* ¶ 18.

Recently, CTI discovered that Peters caused another longstanding CTI client (a structural engineering firm) to cancel its contract with CTI. Through its work for this firm, CTI has obtained well over a million dollars in tax savings for the firm, and the firm had entered into an automatically renewing contract with CTI through which CTI earned hundreds of thousands of dollars in revenue. Labrie Decl. ¶¶ 19-20 & Ex. 3 at General Business Term No. 14. In January 2026, Peters contacted CTI's main client contact at the structural engineering firm to offer consulting services related to R&D tax incentives, and just this month CTI learned that the firm

is cancelling its contract with CTI and has hired PSTS for this work.  *Id.* ¶¶ 22-23 & Exs. 4-5.

**E.     CTI's Agreements with Peters Authorize CTI to Seek Injunctive Relief through This Lawsuit until CTI's Claims Are Resolved in Arbitration.**

The Arbitration Agreement between Peters and CTI requires the arbitration of "all disputes between them of any kind . . . including . . . claims related to or arising out of Employee's employment" but expressly authorizes the filing of lawsuits such as this that seek "equitable relief in aid of arbitration."  Simonsen Decl. Ex. 5 at §§ I, VII.  The CIPAA between Peters and CTI likewise expressly authorizes lawsuits seeking a temporary restraining order or preliminary injunction, "in addition to any and all other remedies," if there is a misuse or threatened misuse of CTI's Confidential Information.  Simonsen Decl. Ex. 6 at § 8.1.

**III.    THE COURT SHOULD ENTER A TRO AND PRELIMINARY INJUNCTION AGAINST DEFENDANTS.**

Injunctive relief is available under Rule 65, whether via a TRO or preliminary injunction, when the movant establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an the TRO or preliminary injunction will not disserve the public interest.  *City of El Cenizo v. Tex.*, 890 F.3d 164, 176 (5th Cir. 2018).  All four factors support CTI's request for injunctive relief.

**A.     CTI Is Likely to Succeed on the Merits.**

In its Complaint, CTI asserts a claim against Peters for breach-of-contract, claims against both Defendants for tortious interference, and claims against both Defendants under the Defend Trade Secrets Act ("DTSA"; 18 U.S.C. § 1836) and Texas Uniform Trade Secrets Act ("TUTSA"; Tex. Civ. Prac. & Rem. Code § 134A).  CTI is likely to prevail on all of these claims.

1. **CTI Is Likely to Prevail on Its Breach-of-Contract Claim.**

Under Texas law, the elements of a breach-of-contract claim are: the existence of a valid contract, performance or tendered performance by the plaintiff, defendant's breach, and damages. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). CTI is likely to prevail on this claim because the CIPAA is a valid contract that Peters entered into in connection with his employment at CTI, and as set forth below, he has breached multiple provisions of the CIPAA and thereby damaged CTI.

a. **Peters breached multiple provisions in the Confidentiality and Intellectual Property Assignment Agreement ("CIPAA").**

Even without the benefit of discovery to understand the full scope of Peters' misconduct, the evidentiary record already shows that Peters breached the CIPAA when he contacted two of CTI's longstanding clients, offered to perform the same consulting work that CTI had been performing for them, and in one instance succeeded in soliciting the business away from CTI. *See supra* Section II.D. The CIPAA's non-solicitation provision prohibits Peters from using CTI's Confidential Information to "[s]olicit, attempt to solicit . . ., or otherwise cause any [client] to terminate their relationship with [CTI]," and the non-interference provision prohibits Peters from using CTI's Confidential Information to "[d]isrupt, or attempt to interfere with or disrupt, the relationship . . . between [CTI] and any [client]." Simonsen Decl. Ex. 6 at §§ 6.1.1, 6.1.2.

Peters' contacts with and solicitation of these CTI clients is a breach of the non-solicitation and non-interference provisions because the CIPAA's broad definition of "Confidential Information" includes the client contact and other client information that Peters used to pitch his services to these CTI clients. *Id.* at § 1.2; Labrie Decl. ¶ 8 (CTI keeps client identities and other client information confidential); *see also supra* Section II.B. Further, because these provisions prohibit the use of CTI's Confidential Information in ***attempts*** to solicit

or interfere, it was an additional breach of these provisions when Peters offered to sell the architectural design firm client the proprietary analyses that CTI had conducted of how the firm's contracts with vendors and customers could be revised to optimize the firm's ability to obtain R&D tax incentives. Labrie Decl. ¶ 18; *supra* Section II.D.

The CIPAA's non-compete provision prohibits Peters from using CTI's Confidential Information to engage in any Competitive Activity, which is defined to include "owning, managing, [or] operating . . . any business that is in competition with the [CTI's business] or that offers services competitive with those offered by [CTI] during the [Peters'] employment." Simonsen Decl. Ex. 6 at § 7.1. Through his work at CTI, Peters was exposed to and used extensive amounts of CTI's Confidential Information regarding CTI's strategies for obtaining tax incentives for its clients and the supporting analyses, including client-specific strategies and other proprietary information for the same two CTI clients that CTI knows Peters solicited. Labrie Decl. ¶¶ 17, 21, 6; *see also supra* Section II.A. Peters is now using this information to own, manage, and operate PSTS, in violation of the non-compete provision. *See* Labrie Decl. ¶ 18, 21-23. Peters had even breached the non-compete provision before he resigned from CTI, since he started PSTS during the term of his employment with CTI, whereas the non-compete provision prohibited Peters from "owning, managing, [or] operating" any competing business during the term of his employment, regardless of whether CTI's Confidential Information was used. Schoenberg Decl. Ex. 1; Labrie Decl. ¶ 14 & Ex. 2; Simonsen Decl. Ex. 6 at § 7.1.

Moreover, because less than five years have passed since the end of Peters' employment with CTI, the CIPAA prohibits Peters from using CTI's Confidential Information for any purpose. Simonsen Decl. Ex. 6 at §§ 2.7, 2.4.1. Thus, each of Peters' uses of CTI's Confidential Information described above is also a breach of the CIPAA's confidentiality provisions. And

Peters' misconduct has clearly caused damages to CTI such that CTI is likely to prevail on its breach-of-contract claim because Peters' solicitation and competition has already caused CTI to lose one client that was in an automatically renewing contract and from which CTI had already earned hundreds of thousands of dollars in revenue. Labrie Decl. ¶¶ 19-20, 22-23 & Exs. 3-5.

### b.     The breached provisions are valid and enforceable.

Under Texas law, a non-compete or non-solicit provision is enforceable if it: (1) "is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made"; (2) is reasonable "to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained"; and (3) "do[es] not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50(a). The CIPAA's non-compete and non-solicit provisions are valid and enforceable because they satisfy all of these requirements.

*"Part of an otherwise enforceable agreement"*: To determine whether this requirement is met, courts "ignore the noncompete covenant and must 'determine whether any binding promises remain that would constitute an enforceable agreement.'" *Safeworks, LLC v. Max Access, Inc.*, No. 09-cv-2860, 2009 WL 959969, at *3 (S.D. Tex. Apr. 8, 2009) (quoting *Ray Mart Inc. v. Stock Bldg. Supply of Tex. LP*, 302 F. App'x 232, 236 (5th Cir. 2008)). If there are "mutual non illusory promises" that remain, this requirement is satisfied. *Visual Edge IT, Inc. v. Vaughan*, No. 22-cv-04220, 2022 WL 9392564, at *4 (S.D. Tex. Oct. 13, 2022).

Through the CIPAA, CTI agreed to provide Peters with confidential information in exchange for his promise to maintain the confidentiality of the information. Courts regularly find that agreements such as these are "an otherwise enforceable agreement" that can contain a non-compete or non-solicit provision. *Id.* at *5 (non-compete clause was ancillary to contract governing disclosure of confidential information in exchange for access to confidential

information); *Impact Fire Servs., LLC v. Osborne*, No. 6:19-cv-00176, 2019 WL 4087563, at *4 (W.D. Tex. June 27, 2019) ("Plaintiff's promise to provide Defendant with confidential information in exchange for Defendant's promise to maintain that confidentiality is in itself an exchange of mutual, non-illusory promises[.]").

 ***"Limitations as to time, geographical area, and scope of activity to be restrained"***: The CIPAA's non-compete and non-solicit provisions contain reasonable limitations that render them enforceable.  Most significantly, the provisions are limited in the scope of restrained activity because for former employees, the provisions prohibit only acts of competition and solicitation "using [CTI]'s Confidential Information."  Simonsen Decl. Ex. 6 at §§ 6.1, 6.1.1, 7.1.  The non-solicit provision is further limited in the scope of restrained activity because it prohibits solicitation only as to clients "who had a relationship with [CTI] within the one-year period prior to the Employee's [separation] and to whom the Employee provided services . . . and/or about whom the Employee had access to Confidential Information."  *Id.* at § 6.1.3.

 Although the non-compete and non-solicit provisions are not limited in time or geography, the absence of such limitations is reasonable given the limited scope of restrained activity.  Moreover, Peters performed work at CTI for clients throughout the United States (Labrie Decl. ¶ 13), making the absence of a geographic limitation particularly appropriate on the facts of this case.  *See Mach 1 Air Servs., Inc. v. Bustillos*, No. 13-cv-00088, 2013 WL 12108595, at *6 (W.D. Tex. May 10, 2013) ("A reasonable area or geographical limitation is considered to be the territory in which the employee worked while in the employment of his employer."); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 656 (Tex. 2006) (non-compete provision that "applies regardless of geographic location" was reasonable and enforceable).

Alternatively, in the event the Court concludes that a temporal and/or geographic limitation is necessary to render these provisions enforceable, then the Court should judicially reform these provisions to "the maximum duration, scope, or geographic area reasonable by law under [the] circumstances." Simonsen Decl. Ex. 6 at § 6.2 (CIPAA's provision expressly authorizing reformation); *see also* Tex. Bus. & Com. Code § 15.51(c) ("[T]he court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable[.]"); *Sunrgy, LLC v. Alfaro*, No. 4:24-CV-3583, 2024 WL 4953430, at *5 (S.D. Tex. Dec. 3, 2024) ("[I]f the Court finds that the Covenant is overbroad and unenforceable, the Court must reform the Covenant rather than simply refuse to enforce it as written.").

***"Do[es] not impose a greater restraint than is necessary"***: Finally, the non-compete and non-solicit provisions impose no greater restraint than is necessary to protect CTI's goodwill and other legitimate business interests. The provisions serve CTI's legitimate interests in protecting the Confidential Information that CTI has spent time and effort developing and protecting (*e.g.*, Simonsen Decl. Ex. 6 at §§ 2.1, 2.4); commensurate with that purpose, the provisions restrain only acts of competition and solicitation "using [CTI]'s Confidential Information." *Id.* at §§ 6.1, 6.1.1, 7.1. Thus, CTI has shown that the non-compete and non-solicit provisions are valid and enforceable—or will be reformed to a valid and enforceable geographic and temporal scope during this lawsuit—such that CTI has shown a likelihood of success on its breach-of-contract claim. *See Sunrgy*, 2024 WL 4953430, at *8 (Plaintiff had shown likelihood of success on claims for breach of non-compete and non-solicit provisions, even though reformation was required).

## 2. CTI Is Likely to Prevail on Its Tortious Interference Claims Against Both Defendants.

CTI has asserted two tortious-interference claims: one claim against PSTS for its interference with the CIPAA between Peters and CTI, and a second claim against both Defendants for their interference with the automatically renewing contract between CTI and its structural engineering firm client. Both claims require (1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss. *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 788 (S.D. Tex. 2010).

As to the claim against PSTS, these elements are satisfied because the CIPAA is a valid contract (Simonsen Decl. Ex. 6); PSTS knew of the contract because Peters is a party to the CIPAA and is the managing member of PSTS (Schoenberg Decl. Ex. 1), and PSTS willfully and intentional interfered with the CIPAA when it received and used CTI's Confidential Information from Peters in violation of his obligations under the CIPAA; and this interference proximately caused actual damage to CTI when Defendants caused the structural engineering firm client to cancel its contract with CTI. Labrie Decl. ¶¶ 19-23. As to the claim against both Defendants, these elements are satisfied because the contract between CTI and its structural engineering firm client is a valid contract (Labrie Decl. ¶ 20, Ex. 3); Peters and PSTS knew of this contract through Peters' work for CTI, and they willfully and intentionally interfered with the contract by convincing the client to cancel with CTI and work with Defendants; and this interference proximately caused actual damage to CTI in the form of a lost client. Labrie Decl. ¶¶ 11-13, 19-23.

## 3. CTI Is Likely to Prevail on Its Trade-Secret Claims Against Both Defendants.

CTI has asserted trade-secret claims under the Defend Trade Secrets Act ("DTSA"; 18 U.S.C. § 1836) and Texas Uniform Trade Secrets Act ("TUTSA"; Tex. Civ. Prac. & Rem. Code

§ 134A). These claims require CTI to prove that (1) CTI owned a trade secret and (2) Defendants misappropriated the trade secret.[2] *See* 18 U.S.C. § 1836(b)(1); Tex. Civ. Prac. & Rem. Code § 134A.002. CTI is likely to prevail in proving both of these elements.

*CTI's Ownership of Trade Secrets*: Under both the DTSA and TUTSA, information qualifies as a trade secret if the owner takes reasonable measures to maintain secrecy of the information and the information derives independent economic value from not being generally known or readily ascertainable. *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58, 2019 WL 369152, at *2 (W.D. Tex. Jan. 30, 2019) (citing Tex. Civ. Prac. & Rem. Code § 134A.002(6), 18 U.S.C. § 1839(3)). CTI takes reasonable measures to maintain the secrecy of its Confidential Information through measures including contractual confidentiality agreements with its clients and employees (Labrie Decl. ¶ 9 & Ex. 1 at § 8.1; Simonsen Decl. ¶ 3 & Ex. 4 at § 18, Ex. 6 at § 2) and technological measures such as password protection and role-based access restrictions (Labrie Decl. ¶ 9). Measures such as these are " reasonable measures to maintain secrecy" under both the DTSA and TUTSA. *E.g.*, *NTGSH JV, LLC v. Williams*, No. 4:20-CV-02469, 2020 WL 8299814, at *2 (S.D. Tex. Nov. 12, 2020).

CTI's Confidential Information also derives independent economic value from not being generally known or readily ascertainable. This Confidential Information—including, for example, CTI's knowledge and analyses regarding the specific approaches that do and do not work for obtaining R&D tax incentives across different industries and for different clients—derives independent economic value because it enables CTI to outperform competitors by

---

[2] The DTSA also requires that the misappropriated trade secret must be "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). This requirement is readily satisfied because CTI's trade secrets relate to the specialty tax consulting services that CTI provides to clients throughout the United States. Labrie Decl. ¶ 10.

providing greater tax savings for its clients, providing comparable tax savings at a lower level of risk, and/or providing more defensible documentation and backup in the event a client's taxes are audited or scrutinized.  Labrie Decl. ¶¶ 6-7.  If CTI's competitors knew of this Confidential Information, CTI would lose the competitive advantage it earned through investing significant time and effort in developing this knowledge.  *See id.*  Further, the TUTSA expressly provides that confidential business information of the type that CTI maintains—including "list[s] of actual or potential customers" and "financial data"—may also constitute trade secrets.  Tex. Civ. Prac. & Rem. Code § 134A.002(6); *see also A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 902 (S.D. Tex. 2015) (collecting cases holding that business information "such as customer lists, pricing information, client information, customer preferences, and buyer contacts may be trade secrets"); *Pittsburgh Logistics Sys., Inc. v. Barricks*, No. 4:20-CV-04282, 2022 WL 2353334, at *7 (S.D. Tex. June 30, 2022) (customer list that at least partially contained confidential information constituted a trade secret).  CTI will therefore prevail in proving that it possesses multiple categories of trade secrets under both the DTSA and TUTSA.

*Defendants' Misappropriation*: Under both the DTSA and TUTSA, "misappropriation" includes any disclosure or use of a trade secret without the trade-secret owner's consent by a defendant who knew that the trade secret was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret" or "derived from or through a person who owed [such] a duty."  18 U.S.C. § 1839(5)(B)(ii)(II); Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(c).

CTI is likely to prevail on its trade-secret claims by proving that both Defendants misappropriated its trade secrets.  Peters acquired CTI's trade secrets "under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret"

because Peters acquired this information pursuant to a written confidentiality agreement with CTI (*i.e.*, the CIPAA). *E.g.*, *Daniels v. Radley Staffing, LLC*, No. 14-19-00054-CV, 2021 WL 282630, at *4 (Tex. App. Jan. 28, 2021) (collecting cases in support of the conclusion that employees' agreement to confidentiality policies in an employee handbook were "circumstances giving rise to a duty to maintain [the] secrecy or limit [the] use" of the employer's trade secrets). Both Defendants knew of the circumstances giving rise to a duty to maintain secrecy because Peters is a party to the CIPAA and is the managing member of PSTS. Simonsen Decl. Ex. 6; Schoenberg Decl. Ex. 1. The DTSA and TUTSA therefore prohibited Defendants from making *any* disclosure or use of CTI's trade secrets, and yet Peters disclosed CTI's trade secrets to PSTS, and both Defendants used the trade secrets to solicit two of CTI's clients, to offer to sell CTI's proprietary contract analyses to CTI's architectural design firm client, and to perform R&D tax consulting services for the structural engineering firm whose business Defendants successfully diverted from CTI. *Supra* Section III.A.1.a; *see also* Labrie Decl. ¶¶ 17-23 & Exs. 3-5.

Further, under the DTSA and TUTSA, courts may enjoin either actual misappropriation *or threatened misappropriation*. 18 U.S.C. § 1836(b)(3)(A)(i); Tex. Civ. Prac. & Rem. Code § 134A.003(a). CTI can show threatened misappropriation by showing that Peters "is in possession of the [trade-secret] information and is in a position to use it." *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 860 (Tex. App. 2003); *TFC Partners*, 2019 WL 369152, at *4 ("When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed." (citation omitted)). At a minimum, CTI is likely to prevail on its trade-secret claims because there is a continuing threat of misappropriation, where Peters learned and used CTI's trade secrets regarding CTI's client-specific strategies and analyses for

obtaining R&D tax incentives through his employment with CTI, and Defendants are now

performing and offering to perform R&D tax consulting services for those same clients.  *See id.*;

*supra* Sections II.A, III.A.1.a; Labrie Decl. ¶¶ 17, 21, 6.

      **B.**    **CTI Has Suffered and Will Continue to Suffer Irreparable Injury if Defendants Are Not Enjoined.**

"[I]njury resulting from the breach of non-compete covenants is the epitome of

irreparable injury."  *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 569 (S.D. Tex. 2014)

(quoting *A & A Global Indus., Inc. v. Wolfe*, No. 3:01-cv-1515, 2001 WL 1388020, at *5 (N.D.

Tex. Nov. 6, 2001)).  Further, "the disclosure of confidential information satisfies the irreparable

injury prong for purposes of a preliminary injunction."  *Id.* (quoting *Traders Int'l, Ltd. v.

Scheuermann*, No. 06-1632, 2006 WL 2521336, at *9 (S.D. Tex. Aug. 30, 2006)); *see also*

*Universal Prot. Serv., LP v. Sommer*, No. 4:23-CV-3608, 2024 WL 718164, at *9 (S.D. Tex. Jan.

11, 2024) ("'The use of an employer's confidential information and the possible loss of

customers is sufficient to establish irreparable harm.'" (citation omitted)); *Sunrgy, LLC v. Alfaro*,

No. 4:24-CV-3583, 2024 WL 4953430, at *11 (S.D. Tex. Dec. 3, 2024) (former employer had

shown irreparable injury and was entitled to preliminary injunction, since "[t]he loss of goodwill

and customers is currently an unquantifiable risk because it is difficult to know how many [of

former employer's] clients [the former employee] might be able to solicit on behalf of [the new

employer]").

      Under this standard, CTI has shown that it has suffered and will continue to suffer

irreparable harm if Defendants are not enjoined because Peters' breaches of the non-compete and

non-solicitation provisions and Defendants' tortious interference and trade-secret

misappropriation have already caused CTI to lose at least one significant client and will continue

to interfere with CTI's business and client relationships.  *Supra* Sections II.D, III.A.  CTI has

also shown that Defendants are misusing its confidential information, which is a separate and independently sufficient showing of irreparable harm. *Daily Instruments*, 998 F. Supp. 2d at 569.

A TRO and/or preliminary injunction is required to prevent further irreparable harm to CTI while CTI pursues its claims against Peters in arbitration. TROs and preliminary injunctions both serve to "to preserve the status quo, prevent irreparable injury to the parties, and 'preserve the court's ability to render a meaningful decision' after a trial on the merits." *Hardy Way, LLC v. TM Perfumes Wholesale, Inc.*, No. 10-cv-2735, 2010 WL 11579798, at *2 (S.D. Tex. Aug. 31, 2010) (citation omitted); *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997). When, as in this case, "the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury," often "by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (citation omitted). Here, the last uncontested status quo between the parties existed before Defendants began using CTI's Confidential Information to compete with CTI and solicit CTI's clients. The Court should therefore enter the requested TRO and preliminary injunction to return the parties to this status while CTI's claims against Peters are litigated in arbitration.

### C. The Balance of Equities Favors CTI.

The balance of equities heavily favors CTI because CTI is being irreparably injured by Defendants' misconduct, whereas Defendants will suffer no hardship from the issuance of the requested injunction. The requested injunction simply seeks to hold Peters to his valid contractual obligations under the CIPAA and to prevent Defendants from misappropriating CTI's trade secrets and interfering with CTI's contracts, as required by applicable law. Enforcing the valid terms of a former employee's agreement with the former employer imposes

no hardship on the former employee.  *Johnson Serv. Grp., Inc. v. Olivia France*, 763 F. Supp. 2d 819, 831 (N.D. Tex. 2011); *Sunbelt Rentals, Inc. v. Holley*, No. 3:21-CV-3241, 2022 WL 827126, at *8 (N.D. Tex. Mar. 18, 2022).  Similarly, the benefits of preventing a defendant from misappropriating trade secrets outweighs any burden the defendant may incur in complying with trade-secret law.  *TFC Partners*, 2019 WL 369152, *4.

D.     The Public Interest Supports the Requested Injunction.

The public interest also heavily favors CTI.  The "public interest is served by enforcing contracts entered into by the parties," including enforcing valid non-compete and non-solicit agreements.  *Robogistics, LLC v. Siemens Indus., Inc.*, No. 1:22-CV-00474, 2023 WL 6614427, at *2 (E.D. Tex. July 20, 2023) (citation omitted); *Cambridge Strategics, LLC v. Cook*, No. 3:10-CV-2167, 2010 WL 5139843, at *7 (N.D. Tex. Dec. 17, 2010); *see also Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 625 (5th Cir. 1985) ("The requirement that we consider the public interest would be meaningless if we were to identify potential injury to the public but were to conclude that in the context of a contract dispute we were constrained to consider only the immediate interests of the parties to the contract.").  The public interest is also served by the protection of trade secrets and the prevention of unfair business practices.  *Reveal Energy Services Inc. v. Dawson*, No. 17-CV-459, 2017 WL 5068459, at *3 (S.D. Tex. Aug. 21, 2017) ("[T]he public also has an interest in protecting intellectual property and preventing former employees from unfairly competing against their former employers through using confidential information and the employers' intellectual property.").  Thus, all factors support the issuance of the requested TRO and preliminary injunction.

IV.     CONCLUSION

For these reasons, CTI requests that the Court enter the requested TRO and preliminary injunction against Defendants Peters and PSTS, as set forth in the concurrently submitted

Proposed Order. In the alternative, CTI requests that it be permitted to take certain discovery from Defendants on an expedited basis and to supplement its request for Preliminary Injunction with the evidence adduced from the expedited discovery.

DATED: February 23, 2026

Respectfully submitted,

By: /s/ Laura W. Duncan
Laura W. Duncan
Fanny B. Turcios
KELLEY DRYE & WARREN LLP
515 Post Oak Blvd., Suite 900
Houston, TX 77027
Telephone: (713) 355-5000
Facsimile: (713) 355-5001
lduncan@kelleydrye.com
fturcios@kelleydrye.com

Anthony P. Schoenberg, *(Pro Hac Vice Forthcoming)*
Tim Horgan-Kobelski, *(Pro Hac Vice Forthcoming)*
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Fax: (415) 954-4480
tschoenberg@fbm.com
tkobelski@fbm.com

Attorneys for Defendant CTI III, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on, the foregoing document was filed with the Court through the CM/ECF system and a copy thereof was served via the CM/ECF system upon all counsel of record.

By: /s/ Laura W. Duncan